Contact, 37-99, Lena Sween v. Campus Group Counsel? Good morning. Proceed. Good morning, Your Honors. May it please the Court. Counsel. My name is Adam Rettberg. I'm representing the plaintiff appellant in this case. There are several issues that we brought up on appeal, two of which obviously stem from the other three, so I won't be discussing the issue of medical bills and TTD today. Obviously, the issues of accident notice and causal connection are prominent. Are dispositive. Correct. Without those, nothing else will flow. The first issue is whether an accident occurred on the given date of April 12, 2006. As you're aware, the allegation here is that it's a back injury of a repetitive nature, subject to repetitive stress from the duties of Ms. Swing during her work as a bartender or respondent, a position she performed for 15 years. The respondent's argument is essentially based upon the fact that the accident date as given and alleged is nine days after the employment relationship is said to have ended. On April 3, 2006, Ms. Swing was taken off work for the companion case to this, which was tried and decided separately. As of April 12, 2006, she was taken off work by her other, her chiropractor specific to this injury. And so that's a problem here. But the fact is that the Court has held, and it appears to be a settled issue of law, that in these repetitive injury situations, the manifestation date can take place after the employment relationship ended. A prominent case of A, C, and S versus the Industrial Commission stated that in that case, there was a 12-day gap in between when the employment relationship ended and when the alleged, when the repetitive injury was alleged. Here we have a nine-day gap. In that case, the Court said that the 12-day gap was not sufficient to render the claim stale and certainly would submit that in this case, nine days would therefore not either. The fact is that alleging a manifestation date of April 12, 2006 in this case is reasonable and falls under the law. This is the first date at which the breakdown in her condition because of the repetitive injury was sufficient to have her spine, her spine care professional take her off work status and essentially create the reasonable presumption in her mind that this might be something for which a claim would rise. And so for that reason, we would submit that the accident date as given is correct and is not against the law and that the Commission's decision, unfortunately, is therefore contrary to the law on this subject. And what about the threshold overarching issue of notice? The Commission found that no notice had been given. Correct. And that's my next point here. The purpose of notice, obviously, is to give the Respondent the opportunity to understand that a claim is or may be pending or filed at some later date so that they can ascertain the facts and prepare a defense if necessary. Now, in this case, we have the Respondent's witness herself, Trish Taylor, testifying that as of the last time that Ms. Swing was employed with Respondent, Ms. Taylor, in her capacity as a beverage manager, which I'll get to in a moment, was aware of the fact that Ms. Swing was having back problems that were interfering with her work and that were apparently exacerbated by her work. Trish Taylor, in her position as a beverage manager, testified that her duties included checking on the bartenders, including Ms. Swing, making up their schedules and running the day-to-day operations for the particular event. In question, this is clearly a supervisory position. Well, let's assume that all of this is true. Let's assume that the supervisor notices she's having some back problems, and let's assume to the far extent that the claimant says she's having back problems. The Act requires, and I think this is sometimes a frequently overlooked issue, it requires notice of an accident, right, not notice even of an injury. But in this case, the problem is if you tell a supervisor that you have a back problem, okay, how does that put the employer on notice at all of an accident, of an injury? I mean, you know, somebody could have injured their back in a garage over the weekend. So, you know, where is the evidence specifically of an accident, of an injury, of an accident at work? Where is that there? Well, that's where the testimony of Trish Taylor is important, because she testified that not only was she aware of this ongoing back problem, but that this had been something that had been addressed by respondents during the course of Ms. Swing in performing her duties. This was something to which they were responding, they were aware that her work duties were continuing to affect this problem and to make it worse, and that she was having difficulty performing her job. But wouldn't they do that anyway? I mean, here's what I'm struggling with. Somebody hurts himself on a weekend activity. They come in on a Monday morning, for example, and they're having a problem with their back. So isn't the employer likely to try and accommodate that because they know that there's the person's having a physical problem, regardless or irrespective of the cause of the problem? Well, I would certainly hope so, and I would submit that a responsible respondent certainly would. But that would be an issue involving one specific incident or accident to which it's easier to pinpoint for the respondent and for the petitioner when exactly it took place. Certainly if you have a worker who, for instance, falls off a scaffold and breaks their leg, you can point to an exact moment in the accident. Here we're talking about a repetitive injury, and so the range of dates on which the, quote, accident can be said to have occurred is of necessity fuzzy. It's impossible to state exactly the moment in which it began. Well, don't we have it fairly established by now in a repetitive trauma case that when the date of accident is presumed to have occurred? I'm sorry. I didn't follow the question. You're talking about repetitive trauma, correct? Right. So don't we, haven't we established that murky area you're talking about that we've established in decisional law that this must happen for the establishment of an accident date? That an onset must be stated, you're saying? Yeah. Yeah, well, I think we have. And, you know, in this case then we're saying that not only did the respondent have notice through Trish Taylor's knowledge of the situation. Through her knowledge? That's correct. Okay, but how is that knowledge communicated to the employer? Well, because the notice requirements have been interpreted by courts consistently to require that the person give information about what has occurred to a person in a supervisory capacity. Here it's quite clear that Trish Taylor, who was in a supervisory capacity, did have knowledge of the facts surrounding the alleged accident, as we're calling it, even prior to the accident. Here's the problem. You're saying, yes, notice was given, perhaps arguably, of a condition. Does it mean the cause of the condition, the accident, happened at work, does it? Yes. Right. And that's the point, and that's why the accident date that was alleged on the application was April 12th, 2006, because that's the point at which the doctor, the chiropractor, took Ms. Swing off of work entirely due to this specific condition. Well, you used the word fuzzy, okay? But let's tie this then into the context of the case. So if it's a little bit unclear, you know, this wasn't the classic notice. I think you sort of tacitly acknowledged that. So what are we doing here? We're reviewing, this is a matter the Commission decided that there was no notice. So now you have the burden of showing that the opposite conclusion is clearly apparent. Where is the Commission's decision clearly apparently wrong? Well, in that stating that there was no notice within the 45-day requirement, when clearly there was notice even prior to the beginning of that requirement. The Respondent had notice, had the facts in hand. You keep saying had notice. Had notice of what? Had notice of the facts. Did she have a back problem? That she had a back problem that was being affected by her work. This is enough to give them the facts necessary to prepare a defense if necessary. Help me out with she had a back problem that was affected by her work. What's the evidence there affected by her work? Well, in that, as the Petitioner herself testified, her work involved a significant amount of lifting of heavy bags of ice and bottles of liquor and so forth and twisting and turning in order to reach the bottles and prepare drinks for customers. In the nature of this repetitive activity, her back, throughout the course of her long employment with this Respondent, began to have these problems and it continued. And by the point in April of 2006, it grew bad enough that she was taken off work specifically because of it and because she could not perform those duties as it was going on. That's all good, but we're still back at notice. If an employee says they have a back problem, okay, and the employer accommodates them and gives them some light duty, where is the notice that the accident or that the condition was work-related? How would the employer know it's work-related in this record? Well, that's where, again, I have to point to Trish Taylor's testimony, where she was aware that her employee had reported to her that her work was causing her these problems. That's notice that there's a condition. I don't think he said the work was causing the problems. The work was affecting her condition. There's a difference. Well, that's correct. But certainly the Workers' Compensation Act would cover either of those situations. Well, not unless the employment was a cause. That's correct. And her saying it's a cause. You know, if I wrench my back skiing, I have a little trouble sitting because I put a cushion behind me when I'm sitting up there on the bench. Doesn't suggest that I've got a work, a compensable work accident, does it? Well, in that case it wouldn't. But there's no such allegation here that there was some sort of outside event that caused this. No, no, no. She's got to prove the notice. Because all she's got to do is prove that she told the employer something that would lead the employer to reasonably conclude that the injury might or may have been caused by work. She didn't tell them a thing. Well, she did tell them. With respect, Your Honor, I would submit that she did tell them that because of this back problem, her duties were making it worse. That's it right there. You know, lifting and twisting was making it worse. All right. I understand you're arguing around the ground. Perhaps what we're ruling you, I don't want to say unnecessarily, your interpretation is the fact that the employer has put on notice that the claimant or the worker has a bad back or condition is a tantamount or the equivalent to notice of an accident, right? It has to be your argument. In that, you know, I wouldn't say that as a global proposition. But in here, in this specific case, the fact that they had this knowledge that this was something that had been going on and was continuing and was growing worse during the course of the employment relationship, then, yes, I would say that that is in this point of view. Let me just ask you, Mr. Publitz-Halsey, wouldn't this sort of put the issue of notice turn upside down? It almost seems like you're saying is if there's a condition, the employee has a physical problem, then it sort of then becomes incumbent on the employer to investigate and find out whether it is or is not workable. I don't think that's what the Act says, is it? It's certainly not in that specific sense. However, I would note that the issue of notice has been given by both the legislature and interpreted by the courts to be one that's liberally construed. And here we have a situation where the employer was in possession of all the facts necessary to form their defense to a potential claim. And they had that notice well within the 45 days, in fact, prior to the start of the 45-day period. They can't claim that they suddenly, as of April 12th, 2006, lost that information and we need to be re-notified. There's not a duty to keep re-notifying. Okay. Counsel, you'll have time for follow-up. Thank you. May it please the Court. Counsel, first and foremost, I'd like to apologize. I arrived late this morning and did not check in, so you will not see my name on your check-in list. For the record, will you? Kind of remember me. Elaine Newquist. And I do apologize because that is very disrespectful to you and to counsel. Thank you. This decision is predicated on the arbitrator's finding that Ms. Swing failed to prove an accidental injury, either on a specific trauma or repetitive trauma theory, culminating on April 12th, 2006. The commission affirms the circuit court goes so far as to state she has also failed to prove notice and causal connection. Counsel argues that it's somehow our burden to refute, but it's actually his burden to try to convince you that all three of those decisions are wrong and that there is more evidence which leads to an opposite conclusion. But there simply isn't. Ms. Swing had a very longstanding history of low back problems with ongoing treatment with her chiropractor since 1994. The fact that she was not working on April 12th, 2006, is not in and of itself determinative, because we are all aware of manifestation dates that can occur after an employee ends his or her employment. However, I think it is significant that she was not, in fact, doing anything for this employer on that date, although she was, in fact, still working her full-time job as a merchandiser elsewhere. But it sort of feeds into some of the problems that you then have with notice, because if you're going to espouse a repetitive trauma culminating on April 12th, 2006, there's an even increased burden on the part of the injured worker to then get something back to the employer, letting them know, I now think this is a work-related problem. If you look at what Trish Taylor's testimony is, she says she does recall at some point that Ms. Swing asked her for a stool to sit on sometimes. That's the extent of it. And when you feed into that or add to that the fact that she had had ongoing back problems since 1994, it does us nothing. She, in fact, goes back to her chiropractor and receives the same kind of care she's been receiving. He never actually makes any specific reference to a work manifestation or a work accident. She's diagnosed with degenerative problems as early as September of 2006. She has increased low back pain without preceding trauma in January of 2007. She has further increased low back pain after a fall outside of the workplace in December of 2007. And Dr. Koh, who is their examining physician, says she has longstanding back pain made worse with sitting, standing, bending, and walking, which she does in both jobs and pretty much everywhere else. We would therefore ask that the commission's decision with respect to all issues be affirmed in its entirety. Thank you, Counsel. Thank you. Rebuttal. Rebuttal. The counsel noted that Ms. Swing had a history of ongoing back problems dating back to 1994. Just as a momentary argument, I think that that speaks to the issue of causal connection, which I did not reach in my previous argument. She started working for the respondent in 1993. And so to the extent that there's a question of whether this is causally related, I would say that that fact does lean towards the favor of the petitioner. Now, obviously, there's other evidence to consider as well. But the fact that these were ongoing back problems for many years, all those years were during the period of her employment with respondents. And I'd ask you to take that into account in considering that. Thank you. Thank you, Counsel. Your argument? The matter will be taken under advisement. Next case.